[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION:
BACKGROUND
This is an action brought by the Plaintiff wife against the Defendant husband for dissolution of their marriage on the grounds of irretrievable breakdown. The parties were married on August 12, 1972 in Geneseo, New York. The parties have three children issue of the marriage: Edward Guthrie, age 21 who presently is a senior at Dartmouth College, Andrew H. Guthrie, born March 21, 1988, and Charles D. Guthrie, born July 11, 1985.[1]
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders, and trial memoranda. Based upon the evidence, the court makes the following findings.
This action was commenced on December 10, 1997. The court has jurisdiction, and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The Plaintiff is forty-eight years old and in good health. She earned a bachelor's degree from Smith College in 1972, a master's degree in business administration from Columbia CT Page 14604 University in 1981, and, at some point thereafter, received a landscaping design certificate from New York Botanical Gardens.
In late 1996, Plaintiff advised Defendant that she wanted a divorce. Shortly thereafter, Defendant moved out of the family residence and into a small two bedroom house, with approximately 1000 square feet, behind the Post Road in Darien. Plaintiff remained in the family dwelling in Darien which, though in need of repairs, has a fair market value of $820,000.
From 1972 to 1976, Plaintiff was a lending officer with the Bank of New York. In 1976, she became a gold and silver trader with Merrill Lynch and continued in that position until her first child was born in January 1978. From December 1982 through July 1985, she worked for an advertising company until her second child was born. In the mid 1990's, she established a landscape design business and, as its sole owner, has operated this business to the present time.[2] Plaintiff not only does design work but also subcontracts the installations. Depending on the season, Plaintiff works between 40 and 70 hours per week. This winter, she intends to take classes in computer-aided design in an effort to increase productivity.
From 1996 to the present, the Plaintiff's average income from her business has been approximately $70,000 per year. The corporation also pays for certain of Plaintiff's expenses including gasoline, car repairs and lawn service.
Defendant is fifty-seven years of age and in good health. He graduated from Yale University in 1965 with an electrical engineering degree. He received a master's degree in business administration from Harvard Business School in 1969. In 1996, he received a master's degree in education from the University of Bridgeport.
At the time of the marriage, Defendant worked as a consultant for Arthur Young. Within six months thereafter, he became chief financial officer of Jonathan Tree Corporation, a company which produced educational filmstrips. After two years, he left Jonathan Tree for a position with General Signal Corporation as assistant controller. He remained at General Signal for 18 years until his position was eliminated as a part of corporate downsizing. He earned approximately $95,000 per year at the time his job ended. Thereafter, he became chief financial officer at Vimrx Corporation, at an annual salary of $75,000, until the CT Page 14605 corporation ceased to operate in early 1995. He then searched, unsuccessfully, for a new position.
After some discussion with the Plaintiff, in 1995, the Defendant decided to seek a teaching position. He had some teaching experience as a Peace Corps volunteer and had enjoyed the work. He determined, at age 55, to seek a position which likely would continue until time for his retirement rather than continue to search for another corporate position. He started as a substitute teacher and later found a full-time position. He presently teaches physics at Naugatuck High School. Defendant's present salary is approximately $38,000 per year. In addition, during the summer, he directs a sailing program for the Point of Woods Foundation for which he is paid approximately $4,500.
Defendant receives approximately $230 per week in dividends from stocks given to him by his parents prior to his marriage. With the exception of a small number of shares sold during the marriage to help pay for living expenses and some substitutions resulting from mergers, takeovers, and stock splits, the original certificates have remained in a safety deposit box. These shares had a value of $25,206 before the marriage and are now worth approximately $405,403.75. Prior to the marriage, Defendant owned additional stocks presently held in a BLC (Bear Sterns) account. These had a value of $18,710 at the time of the marriage and now are worth approximately $176,000.
During the term of this marriage, additional gifts of stock were given to the Defendant by his parents. These are now worth approximately $146,000. Defendant, during the marriage, funded 3 IRA accounts from his earnings which now total $394,237. His family also gave him approximately $100,000 by way of 10 annual gifts of $10,000 and some family furniture. The parties have agreed that this furniture should be divided among their three children. The court orders that they execute all documents necessary to transfer this furniture.
The Defendant's father was also generous to his grandchildren. He set up a trust for each of the three children. The parties have agreed that prior to use for any other purpose, these funds should be used for their college education. The principal amount of these trusts is approximately $400,000. The establishment of these trusts permitted the parties to use their income for other purposes and relieved them of the substantial financial burden associated with college education. CT Page 14606
The Plaintiff had no assets at the start of this marriage. In 1991, she did receive a $10,000 gift from her grandmother. She worked for nearly all the years of the marriage and spent a large amount of her time raising their children and taking care of the family home.
Two years after the marriage, the parties purchased a cooperative apartment in Brooklyn. The purchase price was $63,000. The $23,000 deposit was paid from the Defendant's funds. This property was sold in 1984 with a net gain of approximately $230,000. Prior to this sale, the parties had purchased property in Rowayton which they held for some four years and sold with a gain of approximately $130,000. The parties used the profits from these sales toward the purchase of their family residence at 2 Mystic Lane, Darien.
The family home is held in joint names. It is mortgage free but is in need of approximately $50,000 in repairs. The parties have stipulated that its value, in its present condition, is $820,000.
Plaintiff claims that the breakdown of this marriage was the result of Defendant's decision, in 1995, to change careers. This is not the case. Although the Defendant's change of profession may have increased the level of tension, the relationship of these parties was already troubled. In part, as a result of inappropriate behavior by the Plaintiff, the parties had sought the assistance of counseling in the early 1980's. Problems persisted, at different times and in different degrees, through the time of this lawsuit. Repeating the particulars would serve no useful purpose. However, Plaintiff's fear that the reduction of Defendant's income would drastically change her standard of living was not justified. At present, four years after his change of profession, Plaintiff and her children continue to live in the same house in Darien, the couple's oldest child continues his education at Dartmouth College, and the family has not been deprived of any necessities. In addition, the Plaintiff continued the services of a cleaning woman and spent $5000 to rent a vacation home on Fire Island for the month of July 1999. The Plaintiff was also able to take numerous vacations in 1998 and 1999 including:
 September 1999 — 5 days at Martha's Vineyard; March 1999 — skiing vacation at Jackson Hole, Wyoming; CT Page 14607 January 1999 — 3 days at Arizona; September 1998 — 4 days at Martha's Vineyard; July 1998 — one month on Fire Island.
Defendant's decision, in light of his age and the back-to-back terminations of his two positions, was certainly reasonable. From 1972 through 1995, he had provided the lion's share of the family income and, at the time, his prospect for another high salary corporate position was not good. Although the court has considered fault in formulating its orders, both sides contributed to the failure of this marriage and each must bear responsibility for its failure.
The parties have agreed that they should have joint legal custody of the minor children, and that they shall reside primarily with the mother with reasonable and flexible visitation rights with the father. This agreement is set forth in the Custody Agreement attached hereto as Exhibit A. The court adopts the terms of said agreement and orders are entered accordingly.
Plaintiff claims that the guideline figure for support, $193 per week for the two minor children, is inappropriate in light of the Defendant's substantial stock holdings. She complains that the Defendant's decision to keep these assets in the same growth stocks he received from his family has provided an unreasonably low return of approximately 1 1/2%. The Plaintiff claims that the Court should impute an income of 7% per annum on these shares and calculate the support figure with this income included. Using this formula and a 7% return, the guideline amount would be $291 per week.
The court agrees that, with the Defendant's assets, his support payments should be in excess of $193 per week, but the court will not direct how and where the Defendant should invest his portfolio. However, the court will order, as part of the division of property, a transfer of stock to the Plaintiff in an amount sufficient to earn an amount appropriate for the children's support. This transfer will provide a degree of flexibility in meeting the support needs of the children.
The Court has carefully considered the criteria set forth in Connecticut General Statutes § 46b-62, 46b-81, 46b-82,46b-84, and the applicable case law in reaching the decisions reflected in the orders that follow:

CT Page 14608 1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
 2. The parties are awarded joint legal custody of the minor children, Andrew H. Guthrie, born March 21, 1988, and Charles D. Guthrie, born July 11, 1985. The children shall reside primarily with the mother and the father shall have reasonable and flexible visitation all of which shall be in accordance with the custody provisions attached hereto as Schedule A.
 3. Defendant shall maintain medical and hospitalization insurance so long as he is obligated to support each child. The parties shall equally pay all uninsured medical expenses, including but not limited to medical, hospital, prescriptions, nursing care, psychiatric and psychological expenses. This deviation is based upon the parties' substantial assets, both income-producing and non-income-producing, the earning capacities, and the coordination of total family support. Strict adherence to the guidelines would be inappropriate and inequitable. Child care expenses shall be the responsibility of the Plaintiff and this deviation is appropriate for these same reasons.
 4. Defendant shall pay the Plaintiff the sum of $193 per week for the support of both minor children, in accordance with the child support guidelines, until either child obtains the age of 18 or graduated from high school, whichever is later, but in no event past the child's 19th birthday. Thereafter, support shall be as determined by the Superior Court of the State of Connecticut. Contingent wage withholding is ordered in accordance with the advisement of rights and waiver on file.
 5. Defendant shall transfer to wife the following shares of stock: 540 shares of Dupont (DD), 27 shares of Emerson Electric (EMR), 480 shares of PE Corporation (PEB), 848 shares of United Technologies (UTX), and 120 shares of Celera Genomics (CRA). Defendant will execute all documents necessary to accomplish said transfers.
 6. Defendant shall pay the Plaintiff the sum of $1 per year alimony until death or remarriage of the wife, or until April 1, 2006, whichever first occurs, which amount shall CT Page 14609 be modifiable based upon substantial change in circumstances.
 7. a. Defendant shall transfer all his right, title and interest in and to the premises known as 2 Mystic Lane, Darien, Connecticut to Plaintiff. Plaintiff shall be solely obligated to pay all real estate taxes, utilities and expenses relating to the premises here and after and shall indemnify and hold Defendant harmless from any liability associated therewith.
 b. Plaintiff shall place the house on the market for sale upon the happening of the first of the following events: the death or remarriage of the Plaintiff, the failure of the Plaintiff to use the home as a principal residence for herself and at least one of the children, or Andrew's 20th birthday, March 21, 2008. Upon the sale, Plaintiff shall pay the Defendant 40% of net equity in the house after payment of sales commissions and expenses of the sale, and shall retain as hers 60% of the net equity of the house after the payment of such expenses. The Defendant will be entitled to secure his interest in the house by any legally sufficient and appropriate notice on the land records, but Defendant shall subordinate that notice to any refinancing the Plaintiff shall obtain providing that the amounts of refinance does not impair his collateral in and to 40% of the net equity. Plaintiff shall have the option of buying the Defendant out of his interest at any time. If the Plaintiff undertakes to buy the husband out, the parties shall agree on an appraiser who shall determine the gross value of the property. If the parties are unable to agree upon an appraiser, the court will appoint an appraiser.
 8. Defendant husband shall transfer $197,000 from his Bear Sterns IRA to an IRA designated by the Plaintiff wife. Said transfer shall be by direct transfer from the Defendant's IRA to the Plaintiff's IRA, or if necessary, by preparation and execution of a QUADRO. Court shall retain jurisdiction to effectuate this transfer. The attorney for the Plaintiff shall draft the appropriate documents. Defendant shall retain the balance of the Bear Sterns accounts and the Merrill Lynch SEP. CT Page 14610
 9. Plaintiff shall be entitled to one half of the Defendant's pension benefit from General Signal which interest shall be secured by a QUADRO which shall be prepared at the Plaintiff's expense.
 10. Defendant shall be entitled to all items of personal property listed and marked with a check note on an appraisal from Helene Feldman and Associates dated August 27, 1999 consisting of five pages attached hereto, Exhibit B. In addition, Defendant shall retain the silver flatware which has been in his family for three generations and which is inscribed with the letter "G". The remainder of the personal property shall be divided equally between the parties. In the event there is a dispute concerning any of the items, it shall be submitted to the Family Relations office.
 11. Plaintiff shall be the sole owner of her business and of its corporate stock, said business known as Carole Guthrie Landscape Design, Ltd.
 12. The Defendant and the Plaintiff shall each be solely obligated to pay their own liabilities.
 13. The Guardian Life Insurance policy number 3781926, in the face amount of $600,000 and its cash surrender value insuring the life of the husband and owned by the husband shall be transferred by the Defendant husband to the children's trust, and Defendant shall name the children as equal beneficiaries of said life insurance policy.
 14. Defendant husband shall name the wife as beneficiary of the Mass. Mutual Life Insurance policy with a face value of $20,000 less a loan of $5000, until her death or remarriage.
 15. The Plaintiff wife shall name the children as equal beneficiaries of the First Penn-Pacific Term Life Insurance policy with a face value of $750,000 until each child 18th birthday, or graduation from high school, whichever comes first, but in no event beyond the age of 19. CT Page 14611
 16. Plaintiff wife shall retain the Guardian Life Insurance policy insuring the life of the Defendant which policy is owned by the wife with a face value of $100,000 and a cash value of $14,436.
 17. The Defendant husband shall pay the sum of $7,500 toward the Plaintiff's attorneys fees within 30 days of the date of this order.
 18. Counsel for the Plaintiff shall draft and sign a judgment file within 30 days and send the same to counsel for the Defendant for signing and returning to court.
HILLER, J.